Bissell, P. J.
The application of a few tolerably well settled legal principles will dispose of the propositions on which the appellants rely, and they are equally conclusive of the contentions of the appellee. The appellee wholly relies on the general rule which prevails in the appellate courts. Where a case is controlled by the facts and the findings of the trial court are with the one who insists on the application of the doctrine those findings are usually accepted. We do not believe this rule applicable to the present appeal. The trial court rendered an opinion and therein stated his conclusions on the evidence which the appellee treats as findings of fact. He insists he may safely rest thereon, and that we are necessarily concluded by them and must affirm the judgment. We do not concede this proposition. There were no disputed questions of fact. There was no evidence respecting the antecedent negotiations between Percy and Rice, save that which Rice *400 gave in detailing the history of the transaction. With respect to that evidence we dismiss it from consideration because these negotiations were all merged in the written agreement which must be taken as the only expression of the contract, and all the testimony which Rice gave as to what occurred between him and Percy antecedently to its execution was inadmissible, and must be dismissed from consideration. It is equally true there was no dispute respecting the nature and character of Percy’s agency. The only evidence of that agency is found in the letter of delegation sent by the Mclritosh-Huntington Company to Rice, wherein that corporation states that Mr. Percy is in Denver and they have referred the matter to him, and trust he will be able to make some arrangement that will be satisfactory to all parties. This is the only specific grant of authority. The only other evidence about it is found in Rice’s testimony, and the further correspondence between the corporation and Rice wherein Percy is treated as their agent for the sale of machines and for the establishment of a Denver agency. We have then a record which exhibits the original appointment, with whatever limitations or extensions of power are to be found in the letters of the principal, coupled with evidence of the particular transaction about which the agent was appointed. The case then is one wherein there is no conflict of testimony, nor one in which there is any dispute. The court has found the facts, and has determined where the truth is. Substantially, it is an agreed case, and we have the right under these circumstances to look at the evidence and therefrom determine whether thereon the trial court has reached a correct conclusion. We shall therefore proceed to discuss the case on the basis of the record as presented, and determine the accuracy or inaccuracy of the conclusions embodied in the judgment, and the legal rights of the parties.
The general principles of the law of agency are well defined and the courts are agreed respecting their scope and application. The only difficulty which has been found is in the application of these principles to particular states of facts. The *401 trouble always lies in determining from tbe facts the character of the agency and the authority of the individual who has exercised the delegated power. Ever since the law on this subject was first declared law writers and judges have attempted to define the different sorts of agency. Many of the discrepancies which apparently exist have arisen from these attempts at definition. The profession, as well as the writers and judges recognize that there are many kinds of agency, either particular or special, general or universal. Without attempting to follow either jurist or law writer into this much disputed realm of definition, it may be safely said in this case that Percy was in no sense either a universal or a general agent; he certainly was not a universal agent, or as the books sometimes put it the dominus rerum, nor so far as the record discloses had he any general power to act for or on behalf of the corporation. He was doubtless clothed with authority to negotiate with Rice about tbe sale of machines and the establishment of an agency for this purpose. It was an agency to do a particular thing with reference to particular machines manufactured by this corporation. He was undoubtedly an agent to sell, but an agent to sell is one possessed of very limited authority which must be confined to the transaction in hand, and his power to sell is limited by the principle that the party dealing with the agent must in general ascertain the extent of his authority. It may be said that he was an agent for tbe purpose of establishing an agency. While this is true, an appointment of this description can only concern tbe designation of an agent to dispose of the property intrusted to his care, and with the powers and rights involved in the establishment of an agency to sell. Whether an agent to sell has power to sell on credit we need not discuss. This is clear, an agent to sell has in general no authority to purchase the property. At all events the law does not imply the right because of the appointment. His power is to sell to others. Whether this particular agency was broad enough to entitle bim to sell on credit is a matter which we need not consider because according to the terms of the agreement there was an apparent *402 sale on credit, an execution and delivery of the notes, and an acceptance of these notes by the corporation. To-this extent the power of the agent was not only embraced within the terms of the authority granted, but it was confirmed by the acceptance of the paper by the principal. We do not regard the letter as conferring on the agent unlimited power. Under these circumstances, the law always restrains the agent to the particular business of the principal and to that part of it which is the subject-matter of correspondence between the ageDt and his principal and between the principal and the third party. As a general proposition if the agent attempts to do that which is not within the apparent scope of his power, the party dealing with him is bound at his peril to ascertain the extent of the power which the agent possesses. These principles are recognized in all the cases, and only a few need be cited to support the proposition. Wood v. McGain, 7 Ala. 800 ; Gulick v. Grover, 33 N. J. Law, 463; Story on Agency, §§ 210, 211, et seq.; Billings v. Morrow, 7 Cal. 171; Martin v. Farnsworth, 49 N. Y. 555; Smyth v. Lynch, 7 Colo. App. 383.
These authorities might be multiplied and many cited illustrative of the general proposition and containing many specific instances of its application. While they might strengthen the opinion, we regard the labor incident to the examination as wholly unnecessary because the principle is well established. We conclude from the evidence that Percy was the special agent of the corporation with authority to sell machines, or to establish an agency for the purposes of sale. Under these circumstances if Rice dealt with him on any other basis the principal would not be bound. On the other hand Rice would be bound to ascertain any limitation on his authority, and could not hold the principal should the agent exceed Iris instructions. It therefore follows that when he undertook to deal with Percy with reference to the machines which had been shipped to Denver, he could only deal with him as the agent of -the corporation for the purpose of selling machines, or for the purpose of establishing an agency for their disposition in Denver. In total disregard of this apparent limitation *403 of which he was advised, and of which he had presumptive notice, he negotiated with Percy and made the agreement set out in the statement.
We now come to the consideration of that agreement. According to its terms Rice bought from the MclntoshHuntington ' Company the seventy-five machines therein described and gave his promissory notes for the price. He then sells to the agent Percy the machines which he has thus purchased and takes his promissory notes for the price to protect himself against the paper which he gave the company. In thus dealing he permitted the agent to do what he was not authorized to do by the terms of his appointment. It is always and universally true, that an agent to sell may not himself buy nor can another dealing with an agent thus clothed with authority to sell, himself become the purchaser and sell to the agent, and compel the principal to look to the agent for the consideration.. Such a transaction was not within the scope of Percy’s actual or apparent authority. It is quite' true the agreement recites that if Percy is unable to dispose of the bicycles so as to discharge his notes to Rice, then to that extent Rice is to be relieved from his liability to the Mclntosh-Huntington Company on the notes which he gave on the purchase. We do not regard this limitation or condition as one which in any manner affects the rights of the Mclntosh-Huntington Company .or relieves Rice from his obligation to pay the paper4
There are two answers to this contention. In the first place there is nothing in the record which exhibits or tends to support the fact that Percy had any such authority. It is not naturally included within the powers granted nor will such power be implied unless the agent occupies with reference to the principal a totally different position from that in which Percy stood. He was neither the general nor the universal agent of the company, nor had he the right under his appointment, so far as proven, to make any such contract. Such authority was not expressly granted and it cannot be legally implied from the power expressly given nor inferred from *404 the nature of the transaction. A still stronger reason is found in the fact that this agreement does not purport to be the agreement of the Mclntosh-Huntington Company. It is a contract between Percy and Rice, purely of an individual character including them only, whereto the MclntoshHuntington Company was not made a party either by express words or by implication. The contract was not executed in the name of the company, nor was it signed by the company, nor was it signed by Percy as an agent of the corporation, nor did the signature contain words of description which in any wise tended to show that the contract was executed for or in behalf of the corporation. Under these circumstances the contract cannot be taken as the contract of the corporation.
It has been very gravely and ably urged by counsel for the appellant, that this agreement is under seal, and that this circumstance in and of itself prevents Rice from insisting that •it is a contract of the corporation. It has long been a recognized doctrine in the law, that where a party has made a simple contract in his own name but on behalf of an undisclosed principal, the principal when found may be charged with the contract and sued in assumpsit on the implied promise if the agency was created prior to the execution or the agreement. This is too well settled to be now disturbed. The doctrine has not, so far as we observe, been extended to cases where the original agreement was unde:g seal. Briggs v. Partridge, 64 N. Y. 357; Clark v. Courtney, 5 Pet. 319; Elwell v. Shaw, 16 Mass. 42; Kiersted v. Railroad Co., 69 N. Y. 343; Bassett v. Hawk, 114 Pa. St. 502; Wharton on Agency & Agents, § 283; Dayton v. Warne, 43 N. J. Law, 659; Ford v. Williams, 21 How. 287.
This doctiine has been substantially recognized by the supreme court in the well considered case of Rice v. Bush, 16 Colo. 484. The court considers the question, cites many of the authorities hereinbefore referred to in support of it, though the case really turned on the proposition that the principal was known at the time the contract was made, 'and *405 not named nor in any manner designated in the written agreement. But the court declared their position strengthened by the fact that the agreements were under seal. As we read that case it unquestionably holds that a principal known when the agreement is made, but who is not named, nor in any manner designated or referred to in the agreement is not bound. We are quite unable to appreciate any distinction in principle between that case and the present. This case in no manner respects the purchase and sale of real property, but if it be true hi the one case that a known principal who is not referred to as bound nor designated as a party might not be held when known, where the contract respects the sale of real property, we are unable to see why, even though the transaction involves only the sale of personalty, the known principal may be sued on the sealed instrument. Rice made an agreement with a known agent of a known principal, and therein agreed only with the agent. The principal is in no manner made a party to. the contract. The supreme court recognizes the force of the principle and while they did not regard it as controlling, they do determine the proposition that the known principal who is not made a party to the contract may not be bound by the written agreement, a doctrine which would seem to be wholly applicable and entirely conclusive of the rights of these parties.
There is still a further reason why the plaintiff cannot escape the payment of these notes under the evidence. If we wholly disregard the agreement and determine that it is not a conclusive settlement of what their mutual rights and obligations were and are, which we do not, it would still remain true Rice could not escape liability on this commercial paper by proof of an agreement with the agent that he was not to be bound save under certain conditions and on the happening of certain events. We are quite ready to concede there is an exception to this rule which was expressed in The Brewing Co. v. Barets, 9 Colo. App. 341, and likewise by the supreme court in Hurlburt v. Dusenbery et al., .April term, 1899. These were cases where the proof tended to show *406 that the instrument sued on was never to take effect as a promissory note except on a contingency which never happened. There is no such proof in this case. The notes were executed and delivered to the agent, to be sent to the principal, the Mclntosh-Huntington Company. Rice put his paper on the market, turned it over to the corporation which parted with the consideration by the surrender of the machines and Rice was party and privy to the sale of the machines and to their sale to the principal’s agent. The corporation thus paid an ample consideration for the paper and Rice was a party to the transaction under which that consideration passed to an agent who to his knowledge had no authority to buy. He thus put it in the power of the agent to rob his principal, to appropriate the machines to his own use which he apparently did, and to deprive the principal of the fruits of the sale of the machines. Under these circumstances he is estopped to say that the Mclntosh-Huntington Company suffered no loss and paid no consideration, for he was a privy to the transaction by which they lost title to the machines. He floated his paper* consented to its transmission to the' company, enabled the agent to take possession and dispose of the property to their loss, and he ought not now to be heard to say that the principal must look to the agent for the price. Beyond all this, it is thoroughly well settled that these instruments and contemporaneous agreements are to be taken together and that no parol agreement may be proven which conflicts with a note which the plaintiff has put into circulation. A party to a promissory note who has put it on the market may not vary the terms of it and escape the promise by proof of parol agreements made before it was delivered. This doctrine has become a part of the settled law of commercial paper. To -it there are few if any exceptions. So far as we can discover there is no evidence in this record which in any wise tends to bring the cause within any well established exception. Gilmann v. Henry, 53 Wis. 465; Forsythe v. Kimball, 91 U. S. 291; Randolph on Commercial Paper, § 1903; Goddard v. Cutts, 11 Me. 440; Henshaw v. *407 Dutton, 59 Mo. 139; Burnes v. Scott, 117 U. S. 582; Clanin v. Esterly Harvesting Machine Co., 118 Ind. 372.
These authorities might be extended indefinitely. They are enough to illustrate the proposition which is established by all the cases wherein the matter has been considered.
The evidence which the appellee Rice introduced respecting the negotiations between himself and Percy were wholly inadmissible. We find nothing in the record which would mate the agreement executed by Percy and Rice a defense to the suit on the notes nor anything therein which will enable him to escape liability thereon.
The judgment of the district court to the contrary was erroneous and it will therefore be reversed and remanded for a new trial in conformity with this opinion.

Reversed.